IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HELEN REIBER, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> P/O STEVEN FILLIPONE, *et al.*, <br><br> *Defendants*. | CIVIL ACTION <br> NO. 15-6192 |

**PAPPERT, J.**                                                                                          December 2, 2016

## MEMORANDUM

Helen Reiber ("Reiber") and her daughter Heather Hughes ("Hughes") (collectively "Plaintiffs") sued Penthouse Club @ Philly ("Penthouse" or "the Club"), the City of Philadelphia and individual Philadelphia police officers after Plaintiffs were arrested following an alleged incident at the Club.  Plaintiffs sued Penthouse for false imprisonment and contend, among other things, that Penthouse falsely accused them of theft and communicated this information to the police, which led to the Plaintiffs being detained and arrested.

On June 20, 2016 the Court dismissed Penthouse as a defendant from the case after finding that Plaintiffs had failed to state a claim for false imprisonment and that amendment would be futile.  (ECF Nos. 21 & 22.)  On September 19, 2016, however, the Court modified the order and permitted Plaintiffs to amend their false imprisonment claim against Penthouse.  (ECF No. 30.)  Plaintiffs filed their amended complaint on October 3, 2016, (ECF No. 33), and Penthouse again moved to dismiss it on October 17, 2016.  (ECF No. 35.)  Because Plaintiffs have alleged sufficient facts to state a claim upon which relief can be granted, Penthouse's motion is denied.

1

**I.**

Penthouse Club is a "Gentleman's Club" located at 3001 Castor Avenue in Philadelphia. (Pls.' Am. Compl. ¶ 8, ECF No. 33.) Plaintiffs went to Penthouse on the evening of November 17, 2013 after attending a Philadelphia Eagles game that day. (*Id.* ¶ 8.) While at Penthouse, they allegedly used cash to pay for two drinks and to tip dancers. (*Id.* ¶¶ 9–10.) Before finishing their drinks, Plaintiffs were approached by unidentified employees working as security guards and asked to leave "without explanation." (*Id.* ¶ 11.) They complied and left the Club. (*Id.* ¶ 12.)

While outside, two police officers and several Penthouse employees approached Plaintiffs, claiming that they had not paid for their drinks. (*Id.* ¶ 12.) Plaintiffs allege that the Penthouse employees who accused them of theft and conveyed that information to the police "knew that their accusations were false, or at the very least knew the information they conveyed was misleading in that it was an inaccurate and incomplete recitation of what occurred inside the club." (*Id.* ¶ 13.) The officers—later identified as Jose Perez and Steven Fillipone ("Officers")—detained Plaintiffs for further investigation of the claims of theft. (*Id.* ¶¶ 14–15.) The Plaintiffs were not charged with theft but were arrested and subsequently charged with harassment pursuant to 18 Pa. Cons. Stat. Section 2709 and disorderly conduct pursuant to 18 Pa. Cons. Stat. Section 5503. (*Id.* ¶ 18.) The Officers allegedly did not tell Plaintiffs why they were being arrested and held them in custody overnight. (*Id.* ¶¶ 19–20.) The charges against Plaintiffs were later dismissed. (*Id.* ¶ 37.)

**II.**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl.*

2

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the second amended complaint will survive Defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### III.

The elements of false imprisonment under Pennsylvania law are: (1) the detention of another person and (2) the unlawfulness of such detention. *See Cooper v. Muldoon*, No. 05-4780, 2006 WL 1117870, at *3 (E.D. Pa. Apr. 26, 2010); *see also Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Pennsylvania courts have held that a private individual or entity "can be held liable for false arrest and/or false imprisonment, where he knowingly provides false information to authorities and where the arrest and/or imprisonment results from this information." *Perry v. Redner's Mkt., Inc.*, No. 09-5645, 2010 WL 2572651, at *4 (E.D. Pa. June 21, 2010) ((citing *Doby v. Decrescenzo*, No. 94-3991, 1996 WL 510095, at *13 (E.D. Pa. Sept. 9,

3

1996); *Gilbert v. Feld*, 788 F. Supp. 854, 862 (E.D. Pa. 1992)).  The *Perry*, *Doby* and *Gilbert* decisions rely on the Pennsylvania Commonwealth Court's reasoning in *Hess v. County of Lancaster*, 514 A.2d 681 (Pa. Commw. Ct. 1986).  In *Hess*, the court held that a private citizen who knowingly provides false information to law enforcement may be held liable for malicious prosecution because such an action "prevent[s] the police officer from adequately exercising independent judgment as to whether criminal charges should be instituted."  *Doby*, 1996 WL 510095, at *13 (citing *Hess*, 514 A.2d at 683).  In order to hold a private person responsible for the initiation of proceedings by a public official, *Hess* stated it must "appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false."  *Hess*, 514 A.2d at 683.  *Perry*, *Doby* and *Gilbert* extended this rationale to allow for false arrest and imprisonment claims under such circumstances.[1]  *See Perry*, 2010 WL 2572651, at *4; *Doby*, 1996 WL 510095, at *12–13; *Gilbert*, 788 F. Supp. at 862.

In *Doby*, the defendant provided information to public officials that led them to conclude that the plaintiff was mentally unstable, suicidal and in need of immediate treatment.  1996 WL 510095, at *8.  The defendant initiated the petition process to have the plaintiff involuntarily committed for an emergency examination, told the officials that he had found a suicide note in her desk, informed them that she had access to guns and provided them with an undated letter that the plaintiff had written him discussing painful experiences from her childhood and containing statements about the shortness of time and how life is fleeting.  *Id.* at *4–5.  The

---

[1] Other courts, citing the technical differences between false imprisonment claims and malicious prosecution claims, have refused to extend the rationale and hold private citizens liable in the false imprisonment context.  *See, e.g., Thomas v. IPC Int'l Corp.*, Civ. A. No. 02-8049, 2004 WL 292477, at *4 (E.D. Pa. Feb. 12, 2004); *Naumov v. Progressive Ins. Agency*, Inc., CIV.A. 08-622, 2008 WL 5263703, at *5 (W.D. Pa. Dec. 17, 2008).

defendant, however, neglected to tell the officials that the plaintiff had given him that letter eleven days prior. *Id.* Moreover, although the defendant spoke with both the plaintiff and her husband over the phone the same day he filed the petition and both of them told him that she was fine, he did not communicate that information to the officials. *Id.* Based on the information provided, the officials found that probable cause existed to issue an emergency warrant and have the plaintiff involuntarily committed for examination and treatment. *Id.* at *12.

The plaintiff later sued the defendant informant for false imprisonment. Because the information that the defendant provided the officials was incomplete and misleading, the court faced the issue of whether a false imprisonment claim "could lie against one who does not provide all of the relevant facts to the authorities." *Id.* at *13. The court noted *Hess*'s concern that giving police false information would prevent them from adequately exercising independent judgment as to whether charges should be instituted and concluded that providing authorities with incomplete and/or biased information would result in the same deficiency. *Id.*

Ultimately, the court concluded that a private individual could be held liable if he knowingly provides false or incomplete information that results in the detention of another and denied summary judgment in light of remaining genuine issues of fact as to the information that the defendant possessed, the completeness of the information provided at the time he acted and the existence of probable cause had he been forthright with the officials. *Doby*, 1996 WL 510095, at *13.

In *Perry*, the plaintiff alleged that his employer, in retaliation for complaints of racial discrimination, intentionally provided false information to the police implicating him in a crime that they knew he did not commit. 2010 WL 2572651, at *1. In response to a police investigation of unauthorized charges on a stolen credit card, the employer told police that it was

the plaintiff who was depicted in pictures pulled from the store's video surveillance cameras. *Id.* Using the information provided by the employer, the police prepared a criminal complaint and affidavit of probable cause and arrested and charged the plaintiff. *Id.* After the arrest, however, the police determined that the plaintiff was not the employee depicted in the footage. *Id.* Other information revealed that the employer had investigated another employee for the theft and, after determining that she had done it, pressured her to lie to the police and falsely implicate the plaintiff. *Id.* at *1. The court concluded the plaintiff had sufficiently stated a claim for false imprisonment against his employer by pleading that he was arrested without legal justification as a result of the false allegations made against him. *Id.*

In *Demby v. Drexel University*, 2016 WL 5515853, at *7 (Super. Ct. Aug. 16, 2016), two Drexel University police officers responded to a report of two African-American men walking around campus by aggressively pursuing them, detaining one of them and pinning the other against a wall with their vehicle. The two men had apparently tried to gain access to various buildings, but there was no evidence of criminal activity inasmuch as the buildings were open to the public. *Id.* In an effort to justify their conduct, the officers manufactured evidence, accused the men of using burglary tools in an effort to break into buildings and filled out paperwork to this effect. *Id.* Based on the false allegations in the paperwork, the Philadelphia Police arrested the plaintiff. *Id.* The Superior Court held that the trial court had erred in dismissing the plaintiffs' claims of false arrest and false imprisonment against the Drexel officers and the facts alleged were legally sufficient since "[u]ltimately, appellees' alleged false allegations [were] what prompted the police to arrest appellant," and the officers "surely knew when they created a false record that their actions would lead to an illegal arrest." *Id.*

In their amended complaint, Plaintiffs allege that Penthouse's employees falsely accused them of theft, and then conveyed that information to the officers knowing that their accusations were false or misleading. (Pls.' Am. Compl. ¶¶ 12–13.) According to Plaintiffs, the employees' recitation of this false and/or misleading information caused the police officers to detain Plaintiffs for further investigation and that had the employees not provided the false information to the officers, Plaintiffs would not have been detained, arrested or charged with other criminal offenses. (*Id.* ¶¶ 14–16.) The allegations in this case are somewhat unique in that the Plaintiffs were not charged with the same offenses of which they were allegedly falsely accused. However, at the motion to dismiss stage, taking all the allegations in the complaint as true and drawing all inferences in Plaintiffs' favor, the Court is unable to conclude as a matter of law that the Plaintiffs' arrests for harassment and disorderly conduct did not result from the alleged false accusations made by Penthouse employees. Discovery will likely reveal the extent, if any, to which the information provided to the police by the Penthouse employees was the determining factor in the subsequent decision to criminally charge the Plaintiffs. Penthouse's motion to dismiss is accordingly denied.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.